UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PASTORA LEON, on behalf of herself and
all other similarly situated persons, known
and unknown,

    Plaintiff,

v.

EL-MILAGRO, INC.,

    Defendant.

No. 11 CV 4255
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Pastora Leon sued her former employer, El-Milagro, Inc., under the Fair Labor Standards Act ("FLSA") and a comparable Illinois state law, alleging that she should have been paid for the time she spent donning and doffing her work uniform and certain safety equipment. The complaint was filed on June 22, 2011. Less than three months later, on September 15, 2011, Defendant moved to stay discovery and shortly thereafter moved for summary judgment, arguing that controlling Seventh Circuit precedent could resolve the case quickly. I granted the motion to stay discovery and also stayed further briefing on Plaintiff's motion to certify this as a class action and a collective action under the FLSA. Plaintiff followed with a cross-motion for summary judgment.

For the following reasons, both Defendant's and Plaintiff's motions for summary judgment are DENIED.

I. BACKGROUND

Defendant El-Milagro, Inc. ("El-Milagro" or "The Company") manufactures and sells tortilla products. El-Milagro operates five manufacturing facilities in Illinois and employs

roughly 700 people in those facilities. El-Milagro also operates plants in Georgia, Michigan, and Texas.

Plaintiff Pastora Leon ("Leon" or "Plaintiff") was formely employed by El-Milagro as an hourly employee. She worked at the Company's facility located at 2759 S. Kedzie Ave. from August 19, 2004 through June 11, 2011. In that capacity she helped manufacture food products, namely tortillas and tortilla-related foods.

Throughout her employment with El-Milagro, Plaintiff was required to wear a clean white shirt and pants, earplugs, a hairnet, a helmet (sometimes called a "bump cap"), a security belt, goggles, and steel-toed shoes.[1] The purpose of the hairnets is to keep hair out of the tortilla products. The security belt (or "back belt") "resemble cumberbunds with suspenders, made of a relatively thin and flexible fabric." The purpose of the "security belt" is disputed. Plaintiff argues it is to prevent injury so the company can reduce workers' compensation claims. Defendant claims it provides the belts merely to remind employees of proper posture and techniques for lifting objects.

El-Milagro requires all employees at the Illinois plants to wear the same uniform. Employees at the Georgia and Texas plants do not wear the uniforms. Employees at the Michigan plant wear the uniform, but only after a six-month probationary period during which they do not wear the uniform.

---

[1] The Parties debate whether to call this ensemble "protective gear" or simply a "uniform." Further disputed is whether El-Milagro itself refers to the articles as "uniforms" or "PPE Personal Protective Equipment."

El-Milagro pays for and provides to Leon and the rest of its Illinois employees all of the uniform items and equipment with the exception of the steel-toed shoes. The Company pays a laundry service to clean the white shirt and pants. This costs "significant" amounts of money.

The purpose behind the company requiring Leon and the Illinois employees to change on site is unclear and in dispute. Plaintiff claims it is to reduce germs. Defendant disputes this is the reason and merely claims it is "custom" in the Illinois facilities.

El-Milagro has a Good Manufacturing Practices ("GMPs") Employee Guide applicable to the Illinois plants. The GMPs require Illinois employees to wear clean, company-issued uniforms. It is disputed whether GMPs were in effect during Leon's employment.

All Illinois El-Milagro employees attend an orientation when they begin work at the company. The employees are shown "General Employee Orientation documents" and a hygiene video. Plaintiff claims these orientation documents "instruct" employees to arrive between twenty and thirty minutes prior to the beginning of their shifts in order to change into their uniforms. The Company disputes this characterization but concedes that they "recommend" the early arrival.

The exact procedure regarding Plaintiff's and other employees' arrival at the plant is largely disputed. It is undisputed that all individuals (not just employees, but anyone) who enter the Company's plants must first sign in on an evacuation log. At that point, in four out of the five Illinois facilities employees then move to an Employee Services Desk where they would enter an employee identification number and receive their white shirt and pants for the day. The procedure varies slightly at one facility, the plant at 21st Street and Western Avenue in Chicago, where the white shirt and pants are hanging in the employee's locker. The company provides

3

lockers to all employees. At those lockers, employees change into their uniforms. They then exit the employee locker room and proceed to the production floor, though are not required to go there immediately. Because they are not clocked in, they may socialize before starting work. They must wash their hands at some point before beginning production work. How long it takes to conduct the pre-shift procedure is disputed.

This process is essentially reversed at the end of the shift. Plaintiff would clock out, walk to her locker, change out of her uniform and into her street clothes. On some days she would get a replacement hairnet or gloves on the way from clocking out to the locker. Once changed out at the locker, Plaintiff would leave the protective items such as the bump cap in her locker. She would then return the white shirt and pants at the Employee Services Desk. After returning the shirt and pants, she would leave.

El-Milagro never paid Plaintiff or any of the Illinois employees for the period prior to clocking in, the period during which - among other things - they change into their uniforms. El-Milagro also does not pay for the change-out timing following clock-out.

II. STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal

4

quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

III. ANALYSIS

Plaintiff's basic argument is that she should have been paid for the time she spent changing into and out of (often called "donning and doffing") her El-Milagro uniform and protective items. Additionally, under the continuous workday rule, she believes she should have been paid for the time between and donning and clocking in and the time between clocking out and doffing. Defendant counters this basic argument with two theories: first, that the donning and doffing is not compensable work under the Fair Labor Standards Act; and second, that even if the donning and doffing is work, it is not compensable because it is *de minimis* work.

The Fair Labor Standards Act provides that employers pay employees a minimum hourly wage for all "hours worked." 29 U.S.C. §§ 206, 207. A critical amendment, known as the Portal-to-Portal Act, exempts from compensable time "activities which are preliminary to or

5

postliminary to [the] principal activity or activities" an employee is employed to perform. 29 U.S.C. § 254(a)(2). In an important case interpreting the amended FLSA, the Supreme Court noted that "changing clothes and showering under normal conditions . . . ordinarily" are preliminary or postliminary and thus not compensable. *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956). The Court went on to hold, though, that such activities may be compensable "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." *Id.* at 256. *See also Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009).

This case turns on whether Ms. Leon's donning and doffing is more accurately characterized as "changing clothes . . . under normal conditions," *see id.* at 249, or as something more, some "integral and indispensable part" of her principal duties. *Id.* at 256. The parties essentially agree that this is the key inquiry; what they disagree on is how to decide whether or not the donning and doffing here is an "integral and indispensable part" of Leon's employment.

The Company argues vigorously that this case is controlled by *Pirant v. U.S. Postal Service*, 542 F.3d 202 (7th Cir. 2008). In *Pirant*, the Seventh Circuit was called on to interpret Portal-to-Portal in the context of a Family and Medical Leave Act claim. *Id.* at 208.[2] Plaintiff-Appellant Antoinette Pirant was a postal mail handler who sought credit for the time she would spend putting on and taking off her gloves, shoes, and work shirt. *Id.* The Seventh Circuit commented that "Pirant was not required to wear extensive and unique protective equipment, but rather only a uniform shirt, gloves, and work shoes," decided that this type of donning and

---

[2]The FMLA employs FLSA law for purposes of satisfying its hours-of-service threshold. *See* 29 U.S.C. § 2611(2)( c): *see also Pirant*, 542 F.3d at 208.

doffing was not integral and indispensable, and thus concluded that the donning and doffing was not compensable work. *Id.*

The Company argues that *Pirant* employs a test - what they deem the "unique/non-unique test" - to determine whether or not donning and doffing is integral and indispensable. I can see no such standard emerging from *Pirant* or any other Seventh Circuit case. There are only two surviving references[3] to the word "unique" in *Pirant*. The first comes in the court's description of the Supreme Court's *Steiner* decision: "The Court held in *Steiner* that a battery manufacturer must compensate its employees for the 30 minutes they spent putting on *unique* protective clothing and bathing at the factory because those activities were indispensable to the health and safety of the employees." *Pirant*, 542 F.3d at 208 (emphasis added). The second reference comes in the portion I quoted in the preceding paragraph of this opinion: "Pirant was not required to wear extensive and *unique* protective equipment, but rather only a uniform shirt, gloves, and work shoes." *Id.* (emphasis added).

While the "unique" modifier is important to those quoted portions, I see no indication that it is dispositive to the *Pirant* analysis or that its use is meant to announce any sort of critical test or standard. In the first quote, the more important clause is the second one, in which the court emphasized that the donning and doffing at issue in *Steiner* "were indispensable to the health and safety of the employees." *Id.* The second quote is merely a summary of the facts of *Pirant* itself, meant only to highlight the simple uniform items at issue in that case (i.e., the shirt, gloves, and shoes of a mail handler).

---

[3]In a subsequent order on petition for rehearing, the Seventh Circuit actually amended out two additional references to "unique" and "nonunique" clothing. *See Pirant v. U.S. Postal Serv.*, 2008 U.S. App. LEXIS 24371 (7th Cir. 2008) (modifying original opinion).

A very recent opinion issued in this court is in accord. In *Smith v. Safety-Kleen Sys., Inc.*, the defendant corporation argued that the "FLSA requires compensation only for [donning and doffing] specialized protective gear." 2012 U.S. Dist. LEXIS 5908 *10. Analyzing prior out-of-circuit precedent, the court concluded that "reliance on a categorical distinction between 'ordinary' work clothes and 'protective' gear is untenable" and that "[t]he focus is not on the type of clothing but on the reasons for wearing the clothing." *Id.* at *12-14. The court went on to specifically consider the reasoning and holding of *Pirant* and found that it was "not to the contrary." *Id.* at *14. Rather, the court found that in *Pirant*, under existing standards, the mail handler's donning and doffing "plainly" fell under "normal conditions." *Id.* at *14. The opinion in *Safety-Kleen* does not bind me, but I agree with its analysis. In that case, the court found no "unique/non-unique test" emanating from *Pirant*, and neither do I.

So "unique/non-unique" is not the proper test. That leaves the question of whether any other test or framework exists to help in deciding whether a given process of donning and doffing is "integral and indispensable" to primary activities and thus compensable work. Surveying the case law, I find that the Ninth Circuit's approach is useful. In *Alvarez v. IBP, Inc.*, the Ninth Circuit determined that "[t]o be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer." 339 F.3d 894, 902-03 (9th Cir. 2003), *aff'd on other grounds sub nom IBP v. Alvarez* 546 U.S. 21 (2005). An act is necessary if it is required by law, by company policy, or by the nature of the work performed. *Id.* at 903. At least three other circuits use this approach or one substantially similar. *See Perez v. Mountaire Farms*, 650 F.3d 350, 366 (4th Cir. 2011) (expressly adopting the Ninth Circuit two-part approach because it "provides a consistent construct for application of the *Steiner* test.");

8

*Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010); *Bonilla v. Baker Concrete Const., Inc.* 487 F.3d 1340, 1344 (11th Cir. 2007).

With this legal framework set, it is clear that far too many factual disputes exist for me to grant summary judgment to either party.

Plaintiff and other employees like her help manufacture tortillas and other food products in El-Milagro's manufacturing facilities. That much is clear and undisputed. What is less clear is the precise interrelation of the donning and doffing process at issue and the manufacturing of the tortillas.

Taking just one principal example, the purpose behind the workers' wearing of the white shirt and pants is disputed. It is undisputed that the Company cleans the uniforms and mandates donning and doffing on the spot, but the precise reason for this arrangement is unclear and in dispute. The company says it is merely a custom that was established in 1985 (though doesn't otherwise explain the custom). The company also argues that while they have chosen to mandate the uniforms, no law requires them to do so. Plaintiffs disagree, citing to Ill. Admin. Code tit. 77 § 730.8020. Plaintiffs do not specify which of the seven subparts of that section is meant to apply here. The only subpart seemingly on point is § 730.8020(a), which states that '[a]ll persons, while working in direct contact with . . . food ingredients . . . shall [w]ear clean outergarments . . . .'' Ill. Admin. Code tit. 77 § 730.8020(a). On its face this subpart does not appear to mandate onsite donning and doffing. Plaintiffs have offered no caselaw interpreting the provision in that way, so it is not clear to me that the onsite donning and doffing is in fact mandated by law. This is a legal question, but it is underdeveloped by both parties and bears further briefing.

As a purely factual matter, it again remains unclear what purpose the white pants and shirt serve. It may be (as Plaintiff claims) that the outfit benefits the company primarily by helping maintain a high degree of cleanliness for the food products. But it could also be (as Defendant claims) that it is merely a custom and possibly a benefit to the workers in that they can spare their personal clothes from any mess associated with the preparation. This is unclear and disputed on the facts produced so far.

An additional disputed point is the purpose behind the black safety belt. Plaintiffs argue and offer evidence that its sole point is to reduce workers' compensation claims stemming from back ailments. Defendants counter that the supports are not substantial enough in and of themselves to prevent injury, but merely serve as a beneficial reminder to employees to assume the proper posture. In the Company's view, this is more of a benefit to the employee than it is to the company. A jury could decide this factual issue in either direction.

Also unclear is whether - and if so, why - Plaintiff herself wore the "bump cap" that some El-Milagro employees wore. There are additional examples, but the point is duly made: the number of factual disputes renders summary judgment inappropriate for either party.

IV. CONCLUSION

The parties' cross motions for summary judgment are DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: March 23, 2012

10